UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SHANT DER-BOGHOSSIAN,

Plaintiff,

v.

STATE OF CALIFORNIA, et al,

Defendants.

Case No. 1:26-cv-05453-JLT-EPG (PC)

FINDINGS AND RECOMMENDATIONS THAT THIS CASE PROCEED ONLY ON PLAINTIFF'S EIGHTH AMENDMENT CLAIM FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND VIOLATION OF THE ADA AGAINST DEFENDANTS DIKE, UKLOMOGBE, SEE, AND BROOKS

(ECF No. 10)

FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF BE DENIED

(ECF No. 11)

OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS

ORDER DIRECTING CLERK OF COURT TO REVISE DOCKET

Plaintiff Shant Der-Boghossian is proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on July 14, 2026. (ECF No. 1). On August 13, 2026, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims, in part because it largely consisted of a chronology of Plaintiff's medical history and discussion surrounding 35 health request forms, five grievances, and five requests for accommodation Plaintiff filed over two

years across three different prisons. (ECF No. 5). The Court provided Plaintiff with leave to file a first amended complaint or to notify the Court that he wanted to stand on his initial complaint. (*Id.*).

Plaintiff filed a first amended complaint on October 13, 2026, which is before the Court for screening. (ECF No. 10). Upon review, the Court recommends that Plaintiff's first amended complaint should proceed past screening only on Plaintiff's claim that Defendants Dike, Uklomogbe, See, and Brooks were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and failed to provide reasonable accommodation in violation of the Americans with Disabilities Act ("ADA").

Additionally, Plaintiff filed a motion for preliminary injunctive relief (ECF No. 11) on October 26, 2026. The Court will recommend that Plaintiff's motion for injunctive relief be denied.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking "redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

## II. INITIAL COMPLAINT AND SCREENING ORDER[1]

Plaintiff filed his initial complaint on July 14, 2026, concerning events that occurred at the California Substance Abuse Treatment Facility and State Prison ("CSATF"), Chuckawalla Valley State Prison ("CVSP"), and California State Prison Corcoran ("CSP") and named the following ten defendants: 1) the State of California; 2) California Department of Rehabilitation and Corrections ("CDCR"); 3) CSATF; 4) CSP; 5) O. Galloway, Chief Medical Officer at

---

[1] For readability, minor alterations, like omitting capitalization, have been made throughout to some of Plaintiff's quotations without indicating each change.

CSATF; 6) E. Martin, Chief Medical Officer at CSP; 7) A. Dike, Physician and Surgeon at CSATF; 8) C. Uklomogbe, Physician and Surgeon at CSATF; 9) M. Brooks, registered dietician at CSP; and 10) M. See, nurse practitioner and Plaintiff's "acting physician" at CSP. (ECF No. 1 at 11-13).

In his lengthy complaint, Plaintiff discussed his extensive medical history over two years, including severe pancreatic enzyme deficiency and food intolerances. (ECF No. 1 at 13-14, 25-27). Plaintiff's complaint referred to 35 Health Care Request forms, five grievances, and five separate accommodation requests for a medically-appropriate diet. (*Id.* at 14-15). Plaintiff alleged that "Defendants" did not provide proper dosing of medication or otherwise effectively treat the deficiency and that "Defendants" also denied his accommodation requests for a medically-appropriate, therapeutic diet.

The Court screened Plaintiff's complaint on August 13, 2026 and concluded that he failed to state any cognizable claims. (ECF No. 5 at 9). The Court found that Plaintiff's complaint violated Rules 8, 18, and 20 of the Federal Rules of Civil Procedure because it consisted of a chronological medical history involving multiple providers at multiple facilities over multiple years and asserted that "Defendants" collectively were liable. (*Id.* at 4). The Court also found that Plaintiff's claims for deliberate indifference to serious medical needs and violations of the ADA did not specifically identify what facts supported each claim as to each defendant. (*Id.* at 4, 8).

The Court provided Plaintiff with the standards for potentially relevant claims and gave Plaintiff leave to amend his complaint. (*Id.* at 5-10).

## III. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff filed his first amended complaint on October 13, 2026. (ECF No. 10). Plaintiff again alleges that the events at issue occurred at CSATF and CSP. (*Id.* at 12-19). In his amended complaint, Plaintiff names eight defendants, in their individual and official capacities, including: 1) CDCR; 2) Oscar Galloway, Chief Executive Officer ("CEO") for California Health Care Services ("CCHCS") at CSATF; 3) Edward Martin, CEO for CCHS at CSP; 4) Anthony Dike, physician and surgeon at Facility C; 5) Christopher Uklomogbe, physician and

surgeon at CSATF Facility D; 6) Matthew See, nurse practitioner at CSP Facility 4B; 7) Melanie Brooks, registered nurse dietician at CSP Facility 4B; and 8) State of California.[2] (*Id.* at 1, 4-5, 10-11).

Plaintiff again provides a detailed medical chronology and alleges that he received inadequate medical care and was denied a medically-appropriate diet from 2024 through 2026 while at CSATF and CSP. (*Id.* at 4-19). Specifically, Plaintiff alleges the following:

When Plaintiff returned to CDCR custody and CCHCS medical care on January 5, 2023, he was "experiencing a lot of bowel issues." (*Id.* at 11). He was transferred to North Kern State Prison and then Chuckawalla Valley State Prison, and after a year of digestive symptoms with various tests and diagnoses, Plaintiff was ultimately diagnosed with "severe EPI" on February 12, 2024. (*Id.*). Plaintiff alleges that:

> Severe EPI, not to be mistaken as EPI, requires Pancreatic Enzyme Replacement Treatment (PERT) and a medically appropriate therapeutic diet if metabolic dysfunction and/or food intolerances persist. Failure to do so in severe EPI cases causes unintended weight loss, muscle-wasting, fatigue, weakness, loss of breath, dizziness, cramps, bloating, diarrhea, oily stool, and foul-smelling gas and stool.

(*Id.*).

A gastroenterologist later prescribed medication, but Plaintiff believes the specialist "grossly undermedicated" him given Plaintiff's size. (*Id.* at 11-12). The specialist told Plaintiff that he would need to learn about his food intolerances and "weed out the foods [his] body could no longer tolerate." (*Id.*).

Plaintiff had various follow-up appointments with several medical providers, including another appointment with a gastroenterologist. (*Id.*).

Plaintiff was then transferred to CSATF where he was housed from July 26, 2024 through February 2026 (*Id.* at 12). Defendant Dr. Dike was Plaintiff's primary care provider while he was housed in CSATF Facility C. (*Id.*).

From September 5, 2024 through January 25, 2025, Plaintiff submitted eleven requests

---

[2] While Plaintiff asserts the same claims from his initial complaint, Plaintiff does not name or re-assert his claims against Defendants CSATF and CSP in his amended complaint. (ECF No. 10 at 1, 4-5).

for medical attention to Dr. Dike with complaints such as light-headedness, numbness and tingling in toes, right-side abdominal pains, weight loss of 28 pounds, diarrhea and cramps, fatigue, and five to eight bowel movements a day. (*Id.*). As such, Dr. Dike "became personally aware that [Plaintiff's] plan of care…was ineffective, inadequate at best, from the multitude of complaints." (*Id.*).

Because Dr. Dike ordered blood tests in October and November of 2024, Dr. Dike had the "physical outcome data," which showed Dr. Dike's treatment plan was not effective. Yet, Dr. Dike did not change Plaintiff's care plan. (*Id.* at 13).

Likewise, from May 2024 through January of 2025, Plaintiff submitted six requests for medical care and a "medically appropriate therapeutic diet" after Plaintiff lost weight from being unable to tolerate certain foods. (*Id.*). But Dr. Dike ignored Plaintiff's concerns and did not order a therapeutic diet or refer Plaintiff to a specialist who could confirm Plaintiff was undermedicated with pancreatic enzyme medicine. (*Id.*).

From February 5, 2025 until December 18, 2025, Defendant Dr. Uklomogbe, was Plaintiff's primary care provider at CSATF Facility D. (*Id.*). Again, Plaintiff submitted various written medical complaints concerning cramps, bloating, light-headedness, diarrhea, right-side abdominal pains, dizziness, and black spots in his stool. These complaints would have alerted Dr. Uklomogbe that Plaintiff's plan of care "was no longer effective [and was] medically inadequate." (*Id.* at 14).

Dr. Uklomogbe ordered various blood tests, which would have alerted him to the inadequacy of Plaintiff's care plan, but Dr. Uklomogbe "intentionally ignore[d] the science available to him and deliberately failed to provide medically necessary intervention to his plan of care" including referring Plaintiff to a specialist. (*Id.*). Moreover, Dr. Uklomogbe was aware, through visits with Plaintiff and his written medical complaints, that Plaintiff was losing weight because of food intolerances. (*Id.*). Yet, Dr. Uklomogbe refused to provide a therapeutic diet as a reasonable accommodation and refused to increase Plaintiff's pancreatic enzyme medication. (*Id.* at 14-15).

From December 18, 2025 until February 13, 2026, Plaintiff returned to Dr. Dike's care

at CSATF Facility C. Again, Plaintiff submitted multiple requests for medical care describing symptoms like unintended weight loss, cramps, and foul-smelling gas and stool. (*Id.* at 15). Yet, Dr. Dike ignored the concerns and refused to address Plaintiff's digestive and bowl disorder. (*Id.*).

From July 26, 2024 until February 19, 2026, Defendant Oscar Galloway, CEO for CCHCS at CSATF, responded to Plaintiff's eight grievances and ignored Plaintiff's "pleas for help stating, '…there is a plan of care in place…' without a single intervention thereto." (*Id.*). CEO Galloway also refused Plaintiff's ADA reasonable accommodation requests for a therapeutic diet. (*Id.*).

On February 13, 2026, Plaintiff was removed from CSATF Facility C and placed in restricted housing, pending investigation for an anonymous letter alleging Plaintiff was going to commit an assault on staff. (*Id.* at 16). A week later, Plaintiff was transferred out of CSATF to CSP's restricted housing unit. (*Id.*).

Plaintiff chose not to eat the food at CSP since it contained cheese, wheat, milk, and soy and explained his medical circumstances to correctional staff. (*Id.*). After two days of being refused dietary supplementation, Plaintiff went on a hunger strike. (*Id.*). After four days of not eating, Plaintiff met with a TeleMed provider who ordered nutritional supplementation for 90 days. (*Id.*).

While at CSP from March 13, 2026 until June 1, 2026, Plaintiff was under the care of Defendant Nurse Practitioner See, as his primary care provider. (*Id.*). He was under the "direct dietary supervision" of Defendant Dietician Brooks. (*Id.*).

Plaintiff submitted numerous medical complaints to Nurse Practitioner See regarding Plaintiff's symptoms from "grossly under-medicated severe EPI." (*Id.*). Nurse Practitioner See ignored his complaints and did not intervene in his treatment plan or refer Plaintiff to a specialist. (*Id.*).

Likewise, Plaintiff met with Dietician Brooks numerous times and discussed his intolerances to the supplementation formula and his concerns about the diabetic diet he was on, but she ignored his concerns, refused to change the formula, and then reduced his

supplementation. (*Id.*).

While at CSP, Plaintiff submitted numerous healthcare grievances and ADA accommodation requests for a therapeutic diet. (*Id.* at 18). Defendant Edward Martin, CEO for CCHCS at CSP, reviewed and denied the requests or re-directed them, "only to vanish." (*Id.*). CEO Martin refused to intervene in the care being provided by Nurse Practitioner See and Dietician Brooks. (*Id.*).

Plaintiff was later released from CSP restricted housing (*id.*) and transferred to his current facility at California Men's Colony in San Luis Obispo, California. (*Id.* at 1).

In Claim 1, Plaintiff alleges that Dr. Dike, Dr. Uklomogbe and Nurse Practitioner See were deliberately indifferent to his serious medical needs by failing to prescribe the correct dosage of pancreatic enzyme and refusing to order a therapeutic diet. (*Id.* at 5-6).

In Claims 2 and 3, Plaintiff alleges that Dr. Dike, Dr. Uklomogbe, CEO Galloway, Nurse Practitioner See, Dietician Brooks, and CEO Martin, in their individual and official capacities, were deliberately indifferent to his serious medical needs and violated the ADA by failing to recognize Plaintiff was disabled under the ADA and failing to provide accommodations with unrestricted toilet operations and a therapeutic diet. (*Id.* at 6-7).

In Claims 4, 5, and 6 Plaintiff seems to allege supervisory liability against CEO Galloway for failing to intervene in the treatment provided by Dr. Dike and Dr. Uklomogbe and against CEO Martin for failing to intervene in the treatment provided by Nurse Practitioner See and Dietician Brooks. (*Id.* at 7-9).

Plaintiff also seems to assert that CEO Galloway violated his due process rights under the Fourteenth Amendment by denying or not answering his grievances and "therefore denying 'him' the right to petition the Government for Redress in blatant acts of medical deliberate indifference." (*Id.* at 8).

Plaintiff re-asserts his medical indifference claims against CEO Martin, Nurse Practitioner See and Dietician Brooks. (*Id.*).

In Claim 7, Plaintiff alleges that the State of California and CDCR failed to protect Plaintiff from the cruel and unusual punishment of inadequate medical care. (*Id.* at 10).

Plaintiff alleges that he suffered complications from his medical conditions and treatment, including a fatty liver diagnosis, pain, and distress. Plaintiff seeks compensatory and punitive damages of $5,000,000 from each defendant, along with preliminary and permanent injunctive relief in the form of an order that Defendant CDCR provide a reasonable accommodation of a therapeutic diet and refer him to an EPI specialist "to correct…errors…in treatment…that are continuing at CMC [California Men's Colony] State Prison today." (*Id.* at 19).

## IV. ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection

may be established when an official sets in motion a ‘series of acts by others which the actor knows or reasonably should know would cause others to inflict’ constitutional harms.” *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation “closely resembles the standard ‘foreseeability’ formulation of proximate cause.” *Arnold v. Int’l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep’t of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

**B. Deliberate Indifference to Serious Medical Needs**

“Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.” *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). “[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show ‘deliberate indifference to serious medical needs.’” *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) “a ‘serious medical need’ by demonstrating that ‘failure to treat a prisoner’s condition could result in further significant injury or the unnecessary and wanton infliction of pain,’” and (2) that “the defendant’s response to the need was deliberately indifferent.” *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is established only where the defendant subjectively “knows of and disregards an excessive risk to inmate health and safety.” *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). Deliberate indifference can be established “by showing (a) a purposeful act or failure to respond to a prisoner’s pain or possible medical need and (b) harm caused by the indifference.” *Jett*, 439 F.3d at 1096 (citation omitted).

A mere difference in medical opinion is "insufficient, as a matter of law, to establish deliberate indifference." *Toguchi,* 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013) ("mere indifference, negligence, or medical malpractice" is insufficient, and "[e]ven gross negligence is insufficient to establish deliberate indifference to serious medical needs") (citations and internal quotation marks omitted).

Here, Plaintiff alleges that from May 2024 through June 1, 2026, Dr. Dike, Dr. Uklomogbe, Nurse Practitioner See, and Dietician Brooks were deliberately indifferent to his serious medical needs because they received test results indicating that Plaintiff was malnourished and losing weight and received Plaintiff's written complaints about digestive symptoms and pain, yet they refused to provide additional medication and a therapeutic diet.

Liberally construing the allegations, the Court will recommend that Plaintiff's claim of deliberate indifference to serious medical needs proceed past screening against Dr. Dike, Dr. Uklomogbe, Nurse Practitioner See, and Dietician Brooks.

Plaintiff also alleges that CEO Galloway and CEO Martin were deliberately indifferent to his medical needs because they reviewed Plaintiff's medical grievances and responded that Plaintiff had a treatment plan in place. Plaintiff fails to allege that CEO Galloway and CEO Martin subjectively knew Plaintiff was at serious risk of harm by not increasing enzyme medication or changing to a therapeutic diet and then disregarded that risk. To the contrary, Plaintiff alleges that they reviewed his grievances, looked at his medical records, and confirmed that a treatment plan was in place that included medication dosing prescribed by a specialist in gastroenterology.

Accordingly, the Court will recommend that Plaintiff's claim of deliberate indifference to serious medical needs not proceed past screening against CEO Galloway and CEO Martin.

\\\

**C. ADA**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to inmates within state prisons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998); *see also Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997); *Duffy v. Riveland*, 98 F.3d 447, 453-56 (9th Cir. 1996). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Under the ADA, the "failure to provide reasonable accommodation can constitute discrimination." *Weldeyohannes v. Washington*, 162 F.4th 972, 976 (9th Cir. 2025) (internal quotation marks omitted) (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)).

"To recover monetary damages under Title II of the ADA…, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (citing *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir.1998)). The Court held that deliberate indifference is the appropriate standard to use in determining whether intentional discrimination occurred. *Id.* "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139. "[I]n order to meet the second element of the deliberate indifference test, a failure to act must be the result of conduct that is more than negligent and involves an element of deliberateness." *Id.* at 1139.

Here, Plaintiff alleges that his severe EPI qualified him as disabled and that Dr. Dike, Dr. Uklomogbe, Nurse Practitioner See, and Dietician Brooks knew he required a therapeutic diet but refused to approve Plaintiff's accommodation request.

The Court will recommend that, for the purposes of screening only, Plaintiff's claim of violation of the ADA against Dr. Dike, Dr. Uklomogbe, Nurse Practitioner See, and Dietician

Brooks proceed past screening.

However, for the reasons described above, Plaintiff has not sufficiently alleged that CEO Galloway and CEO Martin were deliberately indifferent to his medical needs. Accordingly, the Court will recommend that Plaintiff's ADA claim against CEO Galloway and CEO Martin not proceed past screening.

**D. Supervisor Liability**

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Under these legal standards, Plaintiff fails to state a claim for supervisory liability against CEO Galloway and CEO Martin. Plaintiff alleges that CEO Galloway and CEO Martin reviewed his grievances and his medical records to confirm that Plaintiff had a treatment plan in place provided by Dr. Dike, Dr. Uklomogbe, Nurse Practitioner See, or Dietician Brooks with a specialist's dosing instructions. Plaintiff has not alleged that either CEO Galloway or CEO Martin participated in the development of the treatment plan or participated in providing direct care to Plaintiff. Likewise, Plaintiff has not made any allegations regarding the institutional policies at CSATF or CSP.

Accordingly, Plaintiff fails to state a claim for supervisor liability against CEO Galloway and CEO Martin, and the Court will recommend that his supervisor liability claim

not proceed past screening.

**E. Fourteenth Amendment Due Process**

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving individuals of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481–84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Here, Plaintiff alleges that CEO Galloway violated his due process rights by denying his grievances. Plaintiff also states that he timely utilized the grievance appeal process and ultimately filed the underlying action. Thus, Plaintiff does not allege that he was deprived of procedural due process, but rather that he disagrees with the decision to deny his grievance.

Accordingly, Plaintiff fails to state a cognizable claim for violation of his rights under the Fourteenth Amendment, and the Court will recommend that Plaintiff's due process claim against CEO Galloway not proceed past screening.

**F. Eleventh Amendment Immunity**

Defendants State of California and CDCR are also subject to dismissal based on the doctrine of sovereign immunity.

"The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an arm of the state, its instrumentalities, or its agencies. However, under *Ex Parte Young*, the Eleventh Amendment does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities." *Fireman's*

*Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n. 28 (9th Cir. 2002) (citations and internal quotation marks omitted); *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (holding that the Eleventh Amendment bars § 1983 suits against a State unless the state has waived its sovereign immunity). Additionally, the Eleventh Amendment does not bar suits seeking damages against state officials in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Along with the CDCR, "California prisons are entitled to Eleventh Amendment immunity." *Lopez v. Wasco State Prison*, 2008 WL 5381696, at *4 (E.D. Cal. Dec. 22, 2008) (citing *Keel v. California Dep't of Corr. & Rehabilitation*, 2006 WL 1523121, at *2 (E.D. Cal. May 30, 2006*), report and recommendation adopted sub nom. Keel v. CDCR*, 2006 WL 2501527 (E.D. Cal. Aug. 28, 2006)); *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (*per curiam*) (holding that the prisoner's Eighth Amendment claims against CDCR for damages and injunctive relief were barred by Eleventh Amendment immunity).

Accordingly, the Court recommends dismissing Plaintiff's claims against the State of California and CDCR.

**V. MOTION TO PRELIMINARY INJUNCTIVE RELIEF**

On October 26, 2026, Plaintiff filed a motion for preliminary injunctive relief, seeking a court order that "Defendant CDCR, and its employees at CMC [presumably, California Men's Colony], provide Plaintiff with a 'knowledgeable EPI specialist'" and a "medically appropriate therapeutic diet." (ECF No. 11 at 1, 16). In support of his motion, Plaintiff provides a declaration with a lengthy chronology of his medical history and attaches screenshots of internet search results for severe EPI. (*Id.* at 10-22). He also attaches his vitamin B12 test results from August 2026 showing Plaintiff within the low-normal range. (*Id.*).

"A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,

810 F.3d 631, 633 (9th Cir. 2015).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that analysis for a temporary restraining order and a preliminary injunction are "substantially identical"). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter,* 555 U.S. at 24.

The Ninth Circuit has held that "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015). A sufficient nexus exists "where the preliminary injunction would grant relief of the same character as that which may be granted finally. Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.* (citation and quotation marks omitted)

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find that the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal Right, and is the least intrusive means necessary to correct the violation of the Federal Right."

The Court will recommend that Plaintiff's motion be denied because he has not met the high burden for obtaining a preliminary injunction.

As described above, the Eleventh Amendment bars suits against CDCR, and therefore, CDCR is not a proper defendant in this action. Additionally, Plaintiff has not sued any individual employee at the California Men's Colony where he is currently housed. Thus, the Court does not have jurisdiction over the entities Plaintiff seeks to enjoin. *Zepeda*, 753 F.2d at 727 ("A federal court may issue an injunction if it has personal jurisdiction over the parties and

subject matter jurisdiction over the claim….”).

Moreover, the Court cannot find at this time that Plaintiff is likely to succeed on the merits. Finally, Plaintiff has not demonstrated that the balance of equities tips in his favor, or that an injunction is in the public interest.

Accordingly, the Court recommends finding that Plaintiff has not met his high burden of proving that he is entitled to a preliminary injunction on his requests to be seen by a specialist and to receive an EPI medical diet at his current facility.

## VI. CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened Plaintiff's first amended complaint and finds that Plaintiff's claims for deliberate indifference to serious medical needs and violation of the ADA against Defendants Dike, Uklomogbe, See, and Brooks should proceed past screening.

The Court will recommend that Plaintiff's claims for deliberate indifference to serious medical needs, supervisor liability, violation of the ADA, and violation of due process under the Fourteenth Amendment against Defendant Galloway be dismissed and that Plaintiff's claims of deliberate indifference to serious medical needs, supervisor liability, and violation of the ADA against CEO Martin also be dismissed.

Finally, the Court will recommend that Plaintiff's claims against Defendants State of California and CDCR be dismissed based on the doctrine of sovereign immunity.

The Court will not recommend that further leave to amend be granted. In the Court's prior Screening Order (ECF No. 5), the Court identified deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided an opportunity to amend his complaint.

Finally, the Court will recommend that Plaintiff's motion for preliminary injunctive relief be denied. (ECF No. 11).

Accordingly, IT IS ORDERED as follows:

1. The Clerk of Court shall revise the docket to terminate Defendants California Substance Abuse Treatment Facility and State Prison and California State Prison Corcoran, as defendants.

Furthermore, IT IS RECOMMENDED that:

1. This case proceed only on Plaintiff's claims for deliberate indifference to serious medical needs under the Eighth Amendment and violation of the ADA against Defendants Dike, Uklomogbe, See, and Brooks;

2. Plaintiff's claims for deliberate indifference to serious medical needs, supervisor liability, violation of the ADA, and violation of due process under the Fourteenth Amendment against Defendant Galloway be dismissed without further leave to amend;

3. Plaintiff's claims of deliberate indifference to serious medical needs, supervisor liability, and violation of the ADA against CEO Martin be dismissed without further leave to amend;

4. Plaintiff's claims against Defendants State of California and CDCR be dismissed based on the doctrine of sovereign immunity.

5. Plaintiff's motion for preliminary injunctive relief (ECF No. 11) be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 6, 2026**

/s/

UNITED STATES MAGISTRATE JUDGE